IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARRY R. TANGERT, JR., : |
|     Plaintiff : |
| : |
| v. : | CIVIL NO. 1:11-CV-2395 |
| : |
| MARK CROSSAN, et al. : |
|     Defendants : |

*M E M O R A N D U M*

I.  *Introduction*

Plaintiff, Barry R. Tangert, Jr., a former Pennsylvania State Trooper, filed this civil-rights action asserting a First Amendment retaliation claim and a claim that he was arrested and prosecuted without probable cause.  The defendants are Jaime Keating, the first assistant district attorney for Cumberland County, Pennsylvania, and seven members of the Pennsylvania State Police (the Commonwealth Defendants): Mark Crossan, Scott Miller, William Fraley, Gilbert Morrissey, M.L. Henry, Nick Chimienti, and Kathy Jo Winterbottom.

Both claims arise from conversations Plaintiff had with Defendants, one conversation with Keating and the other with certain of the Commonwealth Defendants. Both conversations dealt with Plaintiff's belief that Keating was wrongfully pursuing a state-court criminal case against defendants who were innocent.  In the conversation with the Commonwealth defendants, Plaintiff suggested Keating may be violating the law and perhaps should be charged.

We are considering the Commonwealth Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted).

With this standard in mind, we set forth the background of this litigation, as Plaintiff alleges it.

II.  *Background*

Plaintiff alleges as follows. At the pertinent times, Plaintiff was a Pennsylvania State Trooper. On some unspecified date, he met with Keating and complained about a particular prosecution Keating was handling. Specifically, he complained that Keating "was improperly and wrongfully prosecuting innocent people for crimes they didn't commit." (Compl. ¶¶ 14 and 22). Plaintiff's purpose in meeting with Keating was "to persuad[e] him to review the situation[,] making it clear that he was approaching and talking to him as a private citizen." (*Id.* ¶ 22). Plaintiff does not directly allege it, but Keating did not take his advice.

On August 4, 2008, Plaintiff met with defendant Chimienti and complained about Keating's "improper actions." (*Id.* ¶ 13). "Plaintiff made clear to Chimienti that he was complaining as a citizen[,] wasn't an investigator on the case and was deeply

concerned that justice be done." (*Id.* ¶ 15). "Chimienti agreed with plaintiff and told plaintiff he would help him." (*Id.* ¶ 16).

"Plaintiff was then taken to the defendant Crossan who launched into a defense of Keating." (*Id.* ¶ 17). "Plaintiff was then taken to the defendant Miller and subjected to an interrogation of an accusatory nature by Miller and Crossan." (*Id.* ¶ 18). "Plaintiff . . . suggested that Keating was perhaps breaking the law and should possibly be charged." (*Id.* ¶ 19). He said "he would go to the newspaper if these wrongs weren't corrected and asked the defendants to review the materials [he] brought to make a determination [if] Keating should be charged" (*id.* ¶ 20) "for persist[ing] in an unlawful and improper prosecution." (*Id.* ¶ 21). Plaintiff said he "was not investigating the case and was complaining as a private person and as a citizen . . . ." (*Id.* ¶ 21).

Defendant Fraley put Plaintiff on "restricted duty," meaning Plaintiff could not carry a gun, badge or identify himself as a state trooper. (*Id.* ¶ 23). While he was on restricted duty, Plaintiff "was accused of being emotionally and mentally ill," and "defendants Miller, Crossan, and Fraley among others forced the plaintiff to undergo mental evaluations with absolutely no reason or purpose other than to retaliate for questioning Keating who[m] Crossan described as his good friend." (*Id.* ¶ 26).

During this time, Defendant Morrissey and the other defendants "subjected plaintiff to a pattern of antagonistic mistreatment." (*Id.* ¶ 27). Morrissey ordered him to change his hair color. (*Id.* ¶ 28). "The defendants coordinated with Jamie Keating in an

unlawful effort to deter the plaintiff from speaking out about their collective unlawful misconduct." (*Id.* ¶ 30).

Defendant Winterbottom investigated Plaintiff. (*Id.* ¶ 24). "In abject retaliation for plaintiff complaining to Keating and his superiors as a citizen and not as a police officer on a matter of great public concern the plaintiff was vindictively and selectively prosecuted" by the defendants. (*Id.* ¶¶ 32 and 33). On December 29, 2009, Winterbottom subjected Plaintiff to a false arrest, charging him "with crimes implying that he took actions to interfere with prevent or otherwise hinder a prosecution." (*Id.* ¶ 33). However, "[a]t no time did plaintiff threaten to arrest [Jaime] Keating." (*Id.* ¶ 34). To the contrary, "it was the defendants Corssan, Fraley, Miller and others who told Keating that Barry Tangert had suggested to them they might consider arresting him." (*Id.* ¶ 35).

Plaintiff went to the defendant M.L. Henry, at the time the state troopers' equal-employment-opportunity officer. (*Id.* ¶ 37). Henry told plaintiff that he had suffered no sex discrimination by being forced to change the color of his hair, "pointing out that a number of female members were permitted to change the color of their hair with impunity." (*Id.* ¶ 38).[1] "Henry told plaintiff he had no rights because he was a white male and as such was not in a protected class." (*Id.* ¶ 39). "Henry didn't advise the plaintiff as was Henry's duty that he could and should go to the PHRC/EEOC [the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission] to review his situation instead telling him to pursue a grievance he had filed because it was

---

[1] It is unclear who did the pointing out.

-4-

his only remedy." (*Id.* ¶ 40). "Plaintiff did not learn until 2010 that the advice of M.L. Henry a superior that he had trusted that (sic) was not only grossly misleading, but was in gross error." (*Id.* ¶ 41).

In Count I, Plaintiff makes a First Amendment retaliation claim against all the defendants. He alleges they subjected him to a pattern of harassment and discrimination from August 2008 through his termination in March 2010, including the false criminal charges in December 2009, (*id.* ¶ 11), because he spoke to Keating and his superiors about "his personal review of [the] prosecution conducted by Keating reveal[ing] improprieties and possibly even the violation of criminal statutes." (*Id.* ¶ 43).

In Count II, Plaintiff makes a "false arrest" claim against Winterbottom for a "vindictive and selective prosecution" which was allegedly pursued simply because Plaintiff "suggested to his superiors" that they evaluate whether to charge Keating. (*Id.* ¶¶ 51 and 19).

III. *Discussion*

A. *Plaintiff's First Amendment Retaliation Claim Survives a Motion to Dismiss*

"To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the

statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Id.* at 241-42 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 419, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689 (2006)).

A public employee does not speak as a citizen when he makes a statement "pursuant to [his] official duties . . . ." *Garcetti,* 547 U.S. at 421, 126 S.Ct. at 1960. "'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.'" *Gorum v. Sessoms*, 561 F.3d 179, 187 (3d Cir. 2009) (quoting *Connick v. Myers,* 461 U.S. 138, 147-48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).  No one factor is dispositive.  Snyder v. Phelps, ___ U.S. ___, ___, 131 S.Ct. 1207, 1216, 179 L.Ed.2d 172 (2011).  "'The content of speech on a matter of public concern generally addresses a social or political concern of the community . . . ." *Gorum*, 561 F.3d at 187 (quoted case omitted).  Or it "implicate[s] the discharge of public responsibilities by an important government office, agency, or institution."  *Id.* (quoting *Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 397 (3d Cir. 1992)).

The Commonwealth Defendants first move to dismiss this claim on the ground that Plaintiff's statements in the two conversations were made as part of his official duties and hence under *Garcetti* are not protected by the First Amendment.  They argue that "[c]ourts have consistently held" that, when a law enforcement agent, or some

other employee, reports potential wrongdoing to his superiors, even when not appointed the duty to investigate, his conduct falls within his official duties and hence there is no resort to the First Amendment.  (Doc. 12, Supp'n Br. at p. 5).

We disagree.  As noted, Plaintiff alleges he was not assigned the state criminal case as part of his duties as a state trooper, and he denies in his opposition brief that his conduct was part of his official duties. (Doc. 17, Opp'n Br. at pp. 10-11).  In these circumstances, the defendants' *Garcetti* argument cannot prevail at the motion-to-dismiss stage.  Of course, that may change if discovery shows that Plaintiff's communications were in fact part of Plaintiff's official duties.  *See Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007) (relying on trial evidence to determine that the plaintiffs' conduct was part of their official duties and observing that "the question of whether a particular incident of speech is made within a particular plaintiff's job duties is a mixed question of fact and law"), *abrogated on other grounds by Borough of Duryea v. Guarnieri*, ___, U.S. ___, 131 S.Ct. 2488, 180 L.Ed.2d 408 (2011).

The moving defendants next argue that under Third Circuit law Plaintiff's statements were part of his official duties because they derived from "special knowledge and experience" acquired through his job.  *Foraker*, 501 F.3d at 240; *Brown v. Montgomery Cnty.*, ___ F. App'x ___, ___, 2012 WL 942645, at *1 (3d Cir. 2012) (nonprecedential).  In support of this argument, they maintain that: "As a state trooper, plaintiff had the authority and responsibility to investigate and report wrongdoing regarding investigations and prosecutions.  As a trooper, he had the special knowledge

and experience." (Doc. 12, Supp'n Br. at p. 6). Defendants also describe this special knowledge and experience as "special knowledge as a state trooper and experience with the criminal law and investigations." (*Id.*, p. 7).

We disagree. This is an argument based upon a general description of Plaintiff's job duties and the skills he acquired while performing that job. As *Foraker* makes clear, special knowledge and experience must arise from the plaintiff's performance of duties actually assigned to him and the duties that were the basis of his speech. Here, Plaintiff alleges he was not assigned any responsibility in regard to the state criminal case. *Foraker*'s knowledge-and-experience principle does not apply to this situation.

Finally, the Commonwealth Defendants argue that Plaintiff has no retaliation claim because his speech was not on a matter of public concern. In support, they argue the following: (1) the content of the speech did not relate to a matter of social or political concern to the community but rather related to his personal belief that in the particular case at issue Keating should not be bringing charges, and (2) Plaintiff does not allege he made a public statement.

We disagree. The speech did deal with a matter of public concern because it would have been of political concern to the community. In *Azzaro v. County of Allegheny*, 110 F.3d 968 (3d Cir. 1997) (en banc), the Third Circuit stated that speech deals with a matter of public concern if, in part, it brings "to light actual or potential wrongdoing" on the part of a district attorney that would be relevant to evaluating his

performance. *Id.* at 978 (quoted case omitted). Put another way, the content of the speech "implicate[s] the discharge of public responsibilities by an important government office, agency, or institution." *Gorum*, 561 F.3d at 187. Further, speech about alleged wrongdoing by an important government officer may still be on a matter of public concern even if it involved just a single incident. *Azzaro,* 119 F.3d at 978 (speech about a single incident of sexual harassment was speech on a matter of public concern). In sum, it would certainly be of interest to the local community to know if an assistant district attorney were prosecuting people he knew to be innocent. *Id.* ("communications that "brought to light actual wrongdoing on the part of one exercising public authority would be relevant to the electorate's evaluation of the performance of the office of an elected official').

We emphasize here the procedural posture of the case as it comes before us. The Commonwealth Defendants have asked us to dismiss the complaint. On a motion to dismiss, we must accept Plaintiff's allegations as true for the purposes of the motion. We note that Keating, rather than file a motion to dismiss, has answered the complaint and has denied the allegation that he prosecuted individuals he knew were innocent.

In regard to the speech not having been made in public, "if the content and circumstances of a private communication are such that the message conveyed would be relevant to the process of self-governance if disseminated to the community, that

communication is public concern speech even though it occurred in a private context." *Id.* at 978.

B. *The False Arrest, Vindictive Prosecution and Selective Prosecution Claim*

Count II presents an ambiguous claim. Plaintiff makes a "false arrest" claim against Winterbottom for a "vindictive and selective prosecution" which was allegedly pursued simply because Plaintiff "suggested to his superiors" that they evaluate whether to charge Keating. (*Id.* ¶¶ 51 and 19).

The Commonwealth Defendants take from these allegations that Plaintiff is complaining about a lack of probable cause. They move to dismiss Count II on the basis that there was probable cause to arrest Plaintiff. In support, they submit the affidavit of probable cause used in securing Plaintiff's arrest. They assert they may submit this evidence on a motion to dismiss because Plaintiff is relying on the affidavit since he essentially is alleging a lack of probable cause.

This argument lacks merit. It is true that a defendant moving to dismiss may submit a document that Plaintiff is relying on in his complaint. *See Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004), *abrogated in part on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). But the difficulty for the moving defendants is that Plaintiff does not rely on the affidavit of probable cause. Moreover, as Plaintiff asserts, he has a factual dispute with the affidavit. Count II therefore survives the motion to dismiss.

-10-

We will issue an appropriate order.

          /s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: June 7, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARRY R. TANGERT, JR., :
    Plaintiff :
   :
    v. : CIVIL NO. 1:11-CV-2395
   :
MARK CROSSAN, et al. :
    Defendants :

## *O R D E R*

AND NOW, this 7th day of June 2012, it is ORDERED that the

Commonwealth Defendants' motion (Doc. 11) to dismiss Plaintiff's complaint is DENIED.

                              /s/ William W. Caldwell
                              William W. Caldwell
                              United States District Judge